IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CINDY LEE, | ) | CIVIL NO. 11-00782 LEK-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY, a Maryland | ) | |
| corporation, DOES ONE through | ) | |
| ONE HUNDRED, inclusive, and | ) | |
| of each them, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GOVERNMENT
EMPLOYEES INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF CINDY LEE'S CROSS MOTION FOR SUMMARY JUDGMENT**

Before the Court are: (1) Defendant Government

Employees Insurance Company's ("GEICO") Motion for Summary

Judgment ("Motion"), filed on July 11, 2012 [dkt. no. 28]; and

(2) Plaintiff Cindy Lee's ("Plaintiff") Cross Motion for Summary

Judgment ("Cross Motion"), filed on September 5, 2012 [dkt. no.

34]. The parties filed their respective memoranda in opposition

on October 5, 2012 ("Plaintiff's Opposition" and "GEICO's

Opposition"), [dkt. nos. 44, 42,] and their replies on October

12, 2005 ("GEICO's Reply" and "Plaintiff's Reply") [dkt. nos. 47,

46].

These matters came on for hearing on November 1, 2012.

Appearing on behalf of GEICO was Patrick Gallagher, Esq., and

appearing on behalf of Plaintiff was John Choi, Esq.  After

careful consideration of the Motion and Cross Motion, supporting
and opposing memoranda, and the arguments of counsel, GEICO's
Motion is HEREBY GRANTED IN PART AND DENIED IN PART, and
Plaintiff's Cross Motion is HEREBY GRANTED IN PART AND DENIED IN
PART for the reasons set forth below.

## BACKGROUND

On November 29, 2011, Plaintiff filed her First Amended
Complaint ("Complaint") against GEICO in state court.  On
December 23, 2011, GEICO removed the instant action to this
district court based on diversity jurisdiction.  [Dkt. no. 1.]

On and prior to October 4, 2008, GEICO insured
Plaintiff and her husband, Clarence Lee ("Mr. Lee," collectively,
"the Lees"), under an automobile insurance policy that Mr. Lee
first purchased on December 13, 2001 ("GEICO Policy").  When
Mr. Lee purchased the GEICO Policy, he rejected uninsured
motorist ("UM") and underinsured motorist ("UIM") coverage for
his two vehicles.  [Complaint at ¶¶ 10-11, 15.]

Plaintiff claims that, in selecting from the different
GEICO insurance coverage options, "the Lees relied on the
expertise of Defendant GEICO, and/or other Defendants to advise
them, in accordance with Hawai`i law, on selecting insurance
coverage under the GEICO policy." [Id. at ¶ 12.]  Plaintiff
alleges that GEICO failed to inform Mr. Lee of the benefits of UM
and UIM coverage, such as additional protection in case of loss

2

where the liable party was uninsured or underinsured.  Plaintiff

contends that GEICO only informed Mr. Lee that rejecting UM and

UIM coverage would result in "'cheaper premium payments.'"  [Id.

at ¶ 16.]  Plaintiff thus argues that Mr. Lee had no meaningful

understanding of GEICO's presentation of UM and UIM coverage.

[Id. at ¶¶ 16, 25, 27.]

On October 24, 2004, the Lees added a third vehicle to

the GEICO Policy.  Plaintiff contends that, because this addition

constituted a material change in the GEICO Policy, GEICO was

required, but failed, to make a new offer to Mr. Lee to purchase

or reject stacked and/or increased UM and UIM coverage.  On or

about July 23, 2008, the Lees added a fourth vehicle to the GEICO

Policy.[1]  Again, Plaintiff contends that GEICO failed to offer

Mr. Lee the option to purchase or reject stacked and/or increased

UM and UIM coverage when adding the fourth vehicle to the GEICO

Policy.  [Id. at ¶¶ 17-22 (citing Allstate Ins. Co. v. Kaneshiro,

93 Hawai`i 210, 221, 998 P.2d 490, 501 (2000)).]

On or about October 4, 2008, Plaintiff was driving her

1994 Toyota Camry, when it was struck by another vehicle

("subject collision"), rendering Plaintiff's vehicle a "total

---

[1]  Plaintiff contends that on or about July 23, 2008,
Mr. Lee added the Lees' oldest daughter, Karen Lee ("Karen"), to
the GEICO Policy as a new driver.  [Cross Motion, Aff. of Cindy
Lee ("Cindy Aff.") at ¶¶ 10-11; id., Aff. of Clarence Lee
("Clarence Aff.") at ¶¶ 9-11.]  GEICO, however, argues that
Plaintiff did not allege this fact in her Complaint.  [GEICO's
Reply at 2-3.]

loss." [Id. at ¶ 6.]  The vehicle of the liable driver, Jas Rae
Nesmith, was also insured by GEICO for $20,000/$40,000 per
person/accident in bodily injury ("BI") coverage.  [Id. at ¶¶ 7-
8.]  Plaintiff contends that the negligence of Jas Rae Nesmith
caused the subject collision, triggering all applicable UIM
coverage.  [Id. at ¶ 9.]

As of the date of the subject collision, the Lees had
four vehicles insured under the GEICO Policy, including
Plaintiff's 1994 Toyota Camry, the vehicle involved in the
subject collision.  The GEICO Policy provided the following
coverage: (a) BI limits of $100,000/$300,000 each
person/accident; (b) property damage ("PD") limits of $100,000
each accident; and (c) personal injury protection ("PIP") limits
of $10,000 each person.  [Id. at ¶ 24; Cross Motion, Decl. of
Counsel ("Pltf.'s Counsel Decl."), Exh. 2 (summary of insurance
purchases and policy declaration sheets)).]  In sum, with respect
to Mr. Lee's purchase of the GEICO Policy on December 13, 2001
and the addition of vehicles on October 24, 2004 and July 23,
2008 (collectively, "relevant dates"), Plaintiff alleges that:
(1) GEICO failed to explain to Mr. Lee what UM and UIM insurance
provided under the GEICO Policy; (2) Mr. Lee reasonably relied on
the expertise of GEICO to offer UM and UIM coverage; and (3)
GEICO failed to offer UM and UIM coverage, as required by Hawai`i
law.  [Complaint at ¶¶ 25-35.]

4

According to the Complaint, on October 24, 2004 and July 23, 2008, GEICO's maximum available limit for UM and UIM stacked or non-stacked coverage under its policies was $300,000/$300,000 each person/accident for each insured vehicle. [Id. at ¶¶ 36, 40.]  Plaintiff alleges in the Complaint that, if GEICO had offered UM/UIM coverage on these two dates, Mr. Lee would have purchased stacked UM/UIM coverage at the same amount as his bodily injury liability coverage, $100,000 available limit under the GEICO Policy for the Lees' four covered vehicles.  [Id. at ¶¶ 38, 42.]

GEICO has informed Plaintiff, through her counsel, that no UIM coverage is available to the Lees under the GEICO Policy. [Id. at ¶ 43; Pltf.'s Counsel Decl., Exh. 4 (letter from GEICO denying Plaintiff's UIM claim).]  Plaintiff asserts that she is entitled to make a claim for stacked UIM coverage under the GEICO Policy because of GEICO's failure to make new offers to the Lees to purchase or reject stacked UM and/or UIM coverage between December 23, 2001 and October 4, 2008.  In essence, Plaintiff urges this Court to conclude that, based on Kaneshiro and/or Hawai`i law, the GEICO Policy provided stacked UIM coverage with limits of $100,000 for each of the Lees' four covered vehicles, totaling $400,000 in UIM coverage for the subject collision. [Id. at ¶¶ 44-45 (citing Kaneshiro, 93 Hawai`i at 221, 998 P.2d at 501).]  Both of the instant motions focus on Plaintiff's First

Cause of Action, which seeks a declaratory judgment with respect to the issue of whether Plaintiff is entitled to UIM benefits under the GEICO Policy.

The Complaint also asserts the following: Second Cause of Action - Negligence; Third Cause of Action - Breach of Contract and/or Contractual Warranties; Fourth Cause of Action - Unfair and/or Deceptive Trade Practices, in violation of Haw. Rev. Stat. Chapter 480; Fifth Cause of Action - Breaches of Covenant of Good Faith and Fair Dealing; Sixth Cause of Action - Negligent and/or Intentional Infliction of Emotional Distress; and Seventh Cause of Action - Punitive Damages.

In her Second Cause of Action, Plaintiff asserts that, as late as December 13, 2001, GEICO knew or reasonably should have known that it had duties to timely offer Mr. Lee an opportunity to purchase or reject stacked and/or increased UM and UIM coverage whenever a material change was made to the GEICO Policy.  [Id. at ¶ 47 (citing Kaneshiro, 93 Hawai`i at 221, 998 P.2d at 501).]  Plaintiff alleges that GEICO breached its aforementioned duties from December 13, 2001 through October 4, 2008.  Due to GEICO's breach, Plaintiff asserts that she sustained general and special damages.  [Id. at ¶¶ 48-51.]

Plaintiff alleges breach of contract and/or contractual warranties in her Third Cause of Action.  According to Plaintiff, the Hawai`i Supreme Court's "'material change' to an existing

6

policy' doctrine . . . is a public policy that is included in and governs the terms and conditions of UM and UIM coverages in the GEICO [P]olicy." [Id. at ¶ 54 (quoting Kaneshiro, 93 Hawai`i at 221, 998 P.2d at 501).] Plaintiff contends that GEICO failed to offer stacked and/or increased UM and UIM coverage to the Lees and, relying on Kaneshiro, contests GEICO's position that the GEICO Policy does not provide UIM coverage for the subject collision. Plaintiff therefore argues that GEICO's actions constitute breaches of contract and/or breaches of contractual warranties. [Id. at ¶¶ 55-57.]

In Plaintiff's Fourth Cause of Action, she alleges that GEICO's acts and/or omissions were unfair and/or deceptive trade practices, in violation of Haw. Rev. Stat. § 480-2. [Id. at ¶¶ 59-63.]

Plaintiff's Fifth Cause of Action alleges that GEICO's refusal to acknowledge that Plaintiff is entitled to stacked UIM coverage totaling $400,000 for the subject collision constitutes a breach of the covenant of good faith and fair dealing. [Id. at ¶¶ 64-66.]

Plaintiff's Sixth Cause of Action is for GEICO's negligent and/or intentional infliction of emotional distress. [Id. at ¶¶ 67-69.]

Finally, Plaintiff's Seventh Cause of Action is for punitive damages. Plaintiff asserts that, in denying Plaintiff

stacked UM and UIM coverages under the GEICO Policy, GEICO's acts and/or omissions were "willful, wanton, oppressive, reckless, committed with such malice as implies a sprit of mischief or criminal indifference to civil obligations, and/or exhibits and entire want of care that would raise the presumption of a conscious indifference to the consequences." [Id. at ¶ 71.]

Plaintiff seeks: a declaratory judgment; special, general, treble, and/or exemplary damages; attorneys' fees and costs pursuant to Haw. Rev. Stat. §§ 431:10-242, 480-13 or other Hawai`i law; prejudgment interest; and any other appropriate relief. [Id. at pgs. 12-13.]

I. **GEICO's Motion**

First, GEICO argues that, since the time of purchase, the GEICO Policy did not provide UIM coverage. [Mem. in Supp. of Motion at 1-2; Concise Statement of Facts in Supp. of Motion ("GEICO's CSOF"), Decl. of Linda Langley ("Langley Decl."),[2] Exh. C (the Lees' policy declaration sheet and policy contract form).] According to GEICO, under Hawai`i law, automobile insurance policies do not include UM or UIM coverage if "'any named insured in the policy' rejects such coverage in writing." [Mem. in Supp. of Motion at 6 (quoting Haw. Rev. Stat. §§ 431:10C-301(b)(3)-(4)).] GEICO points to Plaintiff's own admission that Mr. Lee

---

[2] Linda Langley is GEICO's Sales and Service Manager. [Langley Decl. at ¶ 1.]

initially rejected UM and UIM coverage when purchasing the GEICO
Policy for his first two vehicles on December 13, 2001. [Id.
(citing Complaint at ¶ 15).]

  Second, GEICO contends that it is entitled to summary
judgment because, as a matter of law, the Lees' subsequent
addition of two vehicles to the GEICO Policy did not require
GEICO to re-offer UM/UIM coverage to the Lees.  GEICO heavily
relies on Kaneshiro for the proposition that "'a new offer of
[UM/UIM] coverage is not required with every policy change, but
only when there is a material change in the policy.'" [Id. at 8
(quoting Kaneshiro, 93 Haw. at 216, 998 P.2d at 496).]  GEICO
contends that, "[t]o constitute a 'material change,' a change
'must have a significant impact on the legal relationship and
obligations between insurer and insured under the policy, and the
impact of that change must be considered in light of any other
changes in the policy and the public policies [behind the UM/UIM
statute].'" [Id. (quoting Kaneshiro, 93 Haw. at 220, 998 P.2d at
500).]  GEICO maintains that, pursuant to Kaneshiro, the events
since Mr. Lee's purchase of the GEICO Policy did not constitute
material changes so as to require GEICO to extend a new offer of
UM/UIM coverage to the Lees.  [Id. at 9 (citing Haw. Rev. Stat.
§ 431:10C-301(e)(2)).]  By analogy to the facts of Kaneshiro,
GEICO asserts that the Lees never made a material change to the
GEICO Policy so as to significantly impact the legal relationship

between the parties, and thus GEICO was not required to extend a new offer of UM/UIM coverage.  [Id. at 9-11.]

Specifically, GEICO emphasizes the fact that UM/UIM coverage attaches to the named insureds, rather than the insured vehicles.  GEICO then points out that the Lees have been named insureds throughout the duration of the GEICO Policy, whereas Kaneshiro involved the change of the policy holder as a result of the insureds' divorce.  Compare Mem. in Supp. Motion at 13, with Kaneshiro, 93 Hawai`i at 220, 998 P.2d at 500.  GEICO therefore argues that the addition of vehicles had no impact on the legal relationship between GEICO and the Lees, and did not constitute material changes in the GEICO Policy.  [Mem. in Supp. of Motion at 13.]

GEICO further argues that the additions of the Lees' third and fourth vehicles cannot have constituted material changes because the GEICO Policy "already contemplated the extension of existing coverage to any vehicles acquired during the policy period."  [Id. at 14 (emphasis in original).]  GEICO argues that this position is consistent with the holdings in similar cases from other jurisdictions.  [Id. at 14-16 (citing Makela v. State Farm Ins. Co., 497 N.E.2d 483, 489 (Ill. Ct. App. 1986); El-Habr v. Mountain States Mutual Casualty Co., 626 S.W.2d 171 (Tex. Ct. App. 1981); Torgerson v. State Farm Mutual Auto. Ins. Co., 957 P.2d 1238, 1287 (Wash. Ct. App. 1998); Wright v.

10

<u>Pemco Mutual Ins. Co.</u>, No. 64233-2-I, 2010 Wash. App. LEXIS 727, at *11 (Wash. Ct. App. Feb. 25, 2010)).]

GEICO further contends that the public policy behind § 431:10C-301 does not support the requirement that a new offer of UM/UIM coverage be made each time vehicles are added to a policy. [<u>Id.</u> at 18-19.] According to GEICO, "public policy favors avoiding the expense and inconvenience (to both insureds and insurers) of obtaining written rejection of UIM each time a new car is added to the policy." [<u>Id.</u> at 20.] GEICO therefore argues that it was not obligated to re-offer UM/UIM coverage to the Lees for each of their subsequently added vehicles after Mr. Lee rejected such coverage when he initially purchased the GEICO Policy. [<u>Id.</u>]

Based on these arguments, GEICO urges the Court to grant summary judgment in its favor.

## II. **Plaintiff's Opposition**

### A. **GEICO's Withholding of Information**

As an initial matter, Plaintiff asserts that GEICO failed to disclose to the Court the fact that Karen was added to the GEICO Policy on July 23, 2008. [Cindy Aff. at ¶¶ 10-11; Clarence Aff. at ¶¶ 9-11.] Plaintiff urges the Court to deny GEICO's Motion based on GEICO's omission alone. [Pltf.'s Opp. at 12-13.]

Furthermore, according to Plaintiff, GEICO should have offered the Lees the option to purchase UM/UIM coverage when they purchased another policy for their fourth vehicle in 2008. Plaintiff contends that, when Mr. Lee purchased an insurance policy for the Lees' fourth vehicle, he informed GEICO that Karen would be the primary driver.  Plaintiff asserts that GEICO's memorandum to the Court includes no mention of Karen in the GEICO Policy.  Plaintiff, therefore, urges the Court to deny the Motion on the ground that it is based on an incomplete record, which, Plaintiff asserts, is contrary to summary judgment law.  [Id. at 12-13.]

**B.** **The Addition of Karen to the GEICO Policy**

Plaintiff argues that the addition of Karen to the GEICO Policy altered the legal relationship between GEICO and the Lees so as to constitute a material change.  Plaintiff contends that, because Karen was a newly licensed teenager, adding her to the GEICO Policy increased GEICO's exposure to loss.[3]  [Id. at 14 (citing Kaneshiro, 93 Haw. at 220, 998 P.2d at 500).]

---

[3] Plaintiff cites the Center for Disease Control and Prevention for its report that "teen drivers between the ages of 16 to 19 are three times more likely than drivers aged 20 and older to be in a fatal crash."  Plaintiff urges the Court to take judicial notice of "the fact that teen drivers pose a greater risk of loss than other drivers." [Pltf.'s Opp. at 14 n.4 (citing Center for Disease Control, http://www.cdc.gov/motorvehiclesafety/teen_drivers/teendrivers_fa ctsheet.html).]

Relying on Matheny v. Glen Falls Insurance Co., 152
F.3d 348 (5th Cir. 1998), Plaintiff asserts that the "addition of
a newly licensed driver to an automobile policy constitutes a
material change." [Id.]  In Matheny, the Fifth Circuit Court of
Appeals, applying Louisiana law, held that, when the insured
added his newly licensed child as an insured driver to the
automobile insurance policy, the insurer was required to make a
new offer of UM/UIM coverage to the insured.  152 F.3d at 354.

Plaintiff asserts that the Lees paid GEICO $200.20
every six months to cover their fourth vehicle under the GEICO
Policy, which reflected a thirty-seven percent increase from the
three-vehicle policy premium, and a forty-six percent increase[4]
from the two-vehicle policy premium.  [Pltf.'s Opp. at 15;
Pltf.'s Counsel Decl., Exh. 2 at 1, 8.[5]]  By purchasing insurance
for their fourth vehicle, the Lees' six-month insurance premium
increased by $133.90.  [Pltf.'s Opp. at 15-16; Pltf.'s Counsel
Decl., Exh. 2 at 1.]  Plaintiff interprets GEICO's acknowledgment
that the addition of a driver to a policy is "'in persona'" to
mean "any insurance company bears more risk of loss[.]"  [Id. at

---

[4]  Plaintiff's memorandum actually states that the addition
of the fourth vehicle resulted in a forty-seven percent increase
from the two-vehicle policy premium.  [Pltf.'s Opp. at 4.]  This
appears to be a mathematical error.

[5]  Because Exhibit 2 contains multiple documents with
varying forms of pagination, and the Exhibit as a whole is not
consecutively paginated, the Court's citations to Exhibit 2
reflect the page numbers in the CM/ECF system.

16 (citing Mem. in Supp. of Motion at 11).]

Plaintiff also contests GEICO's argument that the Kaneshiro court did not even consider whether the addition of a vehicle constitutes a material change to a policy. [Id. at 16.] Plaintiff's next argument relies on Kaneshiro for the proposition that an increase in their premium significantly impacted the legal relationship and obligations between GEICO and the Lees. According to Plaintiff, Kaneshiro establishes that "insurance premiums are vital in assessing whether a material change has been made to the policy[.]" [Id. at 17.] On October 24, 2004, when the Lees purchased automobile insurance for their third vehicle, their six-month premium increased from $431.40 to $538.40. [Id.; Pltf.'s Counsel Decl., Exh. 2 at 1.] Then, on July 23, 2008, the Lees' six-month premium increased to $673.30 after they purchased automobile insurance for their fourth vehicle. [Pltf.'s Opp. at 17; Pltf.'s Counsel Decl., Exh. 2 at 1.] Plaintiff therefore asserts that these increases in the GEICO Policy premium altered the legal relationship and obligations between the parties so as to constitute material changes. [Pltf.'s Opp. at 17.]

Plaintiff also argues that the Lees' increase in the number of insured vehicles under the GEICO Policy from two to three vehicles constituted a material change. In support of her argument, Plaintiff relies on Donaghey v. Cumis Insurance

14

Society, 600 So. 2d 829, 831 (La. Ct. App. 1992), which was also cited by the Kaneshiro court.  In Donaghey, the trial court granted the defendant insurance company's motion for summary judgment, finding that the addition of a car to the automobile insurance policy was not a material change.  On appeal, the Louisiana Court of Appeals reversed, holding that the plaintiff's addition of a vehicle to his automobile insurance policy was not a "renewal or reinstatement" under the policy, and therefore required a separate rejection of UM insurance.  Donaghey, 600 So. 2d at 830-31.[6]

According to Plaintiff, the Donaghey court based its reasoning on the fact that the "addition of the third car increased the coverage provided by the insurer even though none of the other coverage levels had changed."  [Pltf.'s Opp. at 19 (citing Donaghey, 600 So. 2d at 831).]  Plaintiff thus argues that the Lees' subsequent purchases of insurance for their third and fourth vehicles increased the GEICO Policy's coverage, even

---

[6] Donaghey has since been superseded by La. Rev. Stat. § 22:1295 ("Section 1295").  See Am. Deposit Ins. Co. v. Myles, 783 So. 2d 1282, 1289 (La. 2001) (recognizing that the Donaghey rule was legislatively overruled by Section 1295).  Section 1295(1)(a)(ii) states, in pertinent part, "[a]ny changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms."  Under Section 1295, therefore, automobile insurers are not required to re-offer UM/UIM coverage when an insured merely adds a new vehicle to their existing automobile insurance policy.

though the Lees made no changes to the bodily injury limits. [Id.]

Plaintiff argues that, pursuant to Kaneshiro, Hawaii's UIM statute "'is a remedial statute that must be liberally construed[.]'" [Id. at 19-20 (quoting Kaneshiro, 93 Haw. at 218, 988 P.2d at 498).] Plaintiff asserts that, under the totality of the circumstances, GEICO is required to provide her with stacked UIM coverage, and thus Plaintiff urges the Court to deny the Motion as to the First Cause of Action.  [Id.]

C. **Bad Faith**

With regard to her allegation of GEICO's bad faith, Plaintiff asserts that GEICO unreasonably denied her claim and, therefore, failed to consider her interest with equal footing to its own.  Plaintiff urges the Court to consider the following list of principles when considering the Motion as to her Fifth Cause of Action:

- An insurer [sic] is not precluded from bringing her bad faith claim even where there is no coverage liability on the underlying policy.  Enoka v. AIG Hawaii Ins. Co., 109 Haw. 537, 128 P.3d 850 (2006).

- An insurer is liable for bad faith where it unreasonably delays or denies payment of benefits.  Best Place Inc. v. Penn American Ins. Co., 82 Haw. 120, 133[, 920 P.2d 334, 347] (1996).

- An insurer that acts maliciously towards its insured may be held liable for punitive damages.  Id.

16

- The implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance.  Id. at 131.

- Where insurance company fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of the implied covenant of good faith and fair dealing.  Id. (citation omitted).

- In securing the reasonable expectations of the insured under the insurance policy, there is usually an unequal bargaining position between the insured and the insurance company.  Id. at 128.

- In delineating the benefits which flow from an insurance contract relationship, we must recognize that in buying insurance an insured usually does not seek to realize a commercial advantage, but, instead, seeks protection and security from economic catastrophe.  Id. at 129.

- The whole purpose of insurance is defeated if an insurance company can refuse or fail, without justification, to pay a valid claim. Id. at 128-9.

- An insurance company must treat its insured's interest equally with its own.  Delmonte v. State Farm Fire and Cas. Co., 90 Haw. 39[, 975 P.2d 1159] (Haw. 1999).

[Id. at 20-21.]  Based on this list of legal principles,

Plaintiff argues that GEICO's conduct was in bad faith and urges

the Court to deny the Motion as to her Fifth Cause of Action.

[Id.]

17

### D.   **Public Policy**

Plaintiff next urges the Court to deny the Motion "[i]n light of Hawaii's strong public policy and liberal application of its UM/UIM statutes[.]" [Id. at 22.]  Plaintiff asserts that public policy supports providing her with UIM benefits so that she can be "fairly and reasonably compensated for the three bulging discs in her spine." [Id. (citing Cross Motion, Pltf.'s Counsel Decl., Exh. 5 (Pltf.'s MRI Report dated 12/8/08).] Plaintiff challenges GEICO's argument that public policy favors reducing costs for insurers so that such savings can be passed on to consumers.  Plaintiff contends that this argument has been rejected by Mollena v. Fireman's Fund Insurance Co. of Hawaii, Inc., 72 Haw. 314, 816 P.2d 968 (1991).  [Id. at 22.]  Plaintiff states, "'[GEICO] argues that requiring repeat offers in every renewal is cost prohibitive and contrary to the legislative intent to provide coverage at the lowest possible cost.  That is, the increase in administrative costs will be transferred to the consumer.  We find this argument unpersuasive.'"  [Id. at 22-23 (quoting Mollena, 72 Haw. at 326, 816 P.2d at 974).]

Plaintiff asserts that, in making a new offer of UM/UIM coverage to the Lees, GEICO would have only incurred expenses in the form of printing and postage, at most on three occasions. Plaintiff therefore contests GEICO's argument of cost reduction, and argues that the stronger public policy is to require GEICO to

follow Hawai`i law regarding UM/UIM coverage.  Plaintiff asserts that such action will send a clear message to the insurance industry regarding what type of conduct is reasonable and what is disallowed.  [Id. at 23.]

### E.    The Statutory Requirements of a UIM Coverage Offer

Plaintiff argues that the GEICO UM/UIM Offer Form, which Mr. Lee signed in 2001 at the initial purchase of the GEICO Policy ("2001 UM/UIM Offer Form"), contains terms that contravene statutory provisions and public policy and, therefore, must be stricken.  [Id. at 24; Pltf.'s Counsel Decl., Exh. 1 (2001 UM/UIM Offer Form).]  Plaintiff also urges the Court to find that "the 2001 UM/UIM Form is unenforceable to the extent that [GEICO] seeks to deny [Plaintiff] UIM benefits."  [Pltf.'s Opp. at 24.]

Pursuant to Haw. Rev. Stat. § 431:10C-301(d), insurers are required to make a new offer of UM/UIM coverage with "each motor vehicle insurance policy."  Plaintiff again asserts that Mr. Lee purchased "another motor vehicle insurance policy" for the Lees' third vehicle in 2004.  [Id.]  Plaintiff argues, therefore, that the statutory language of § 431:10C-301(d), specifically the term "each," required GEICO to make a new offer of UM/UIM coverage to the Lees when the Lees purchased an automobile insurance policy for their third vehicle.  In support of her argument, Plaintiff asserts that "'each' vehicle in the [GEICO Policy] had its own separate and distinct premium."  [Id.

19

(citing Pltf.'s Counsel Decl., Exh. 2).]  Plaintiff makes the

same argument as to the addition of the Lees' fourth vehicle to

the GEICO Policy in 2008.  [Id.]

        Plaintiff asserts that, pursuant to Kaneshiro,

automobile insurers must offer insureds the opportunity to

purchase UIM coverage for every new insurance policy, with the

exception of "'renewal or replacement policies.'"  [Id. at 25

(quoting Kaneshiro, 93 Haw. at 215, 998 P.2d 495).]  Plaintiff,

once again relying on Kaneshiro and Donaghey, contests GEICO's

argument that the insurance policies purchased for the Lees'

third and fourth vehicles constitute renewal or replacement

policies.  According to Plaintiff, the insurance policies

purchased for the Lees' third and fourth vehicles in 2004 and

2008, respectively, do not constitute renewals because the

vehicles were not previously insured by GEICO by the Lees.

Again, Plaintiff appears to argue that the Lees purchased

separate automobile insurance policies for vehicles three and

four.  Plaintiff's next argument, however, is that the insurance

policies for vehicles three and four do not constitute "renewals"

because the number of vehicles under the GEICO Policy increased

with the Lees' addition of vehicles in 2004 and 2008.  [Id. at

25.]  Based on these arguments, Plaintiff argues that "the

purchase of additional policies in 2004 and 2008 were not

'renewals' or 'replacement' policies[.]"  [Id. at 26.]

Furthermore, Plaintiff points to the 2001 UM/UIM Offer Form statement, "'I further understand that my coverage selections and rejections will apply at any **subsequent issuance**, renewal, **transfer**, reinstatement or re-issuance of my policy.'" [Id. at 26 (emphases in Pltf.'s Opp.) (quoting Pltf.'s Counsel Decl., Exh. 1 at 4).]  Plaintiff points out that this language is broader than the statutory "renewal or replacement policy" language contained in § 431:10C-301.  Plaintiff asserts that "the terms of a statute in effect at the time an insurance policy is written are read into the contract and becomes part of the insurance policy[,]" and that "courts will not enforce terms of a contract that are against public policy or contravene statutory limitations that control at the time the contract is written." [Id. at 26-27 (some citations omitted) (citing Taylor v. Government Employees Ins. Co., 90 Haw. 302, 306, 978 P.2d 740, 744 (Haw. 1999)).]

Plaintiff appears to argue that the 2001 UM/UIM Offer Form language is so broad as to contravene § 431:10C-301. Plaintiff therefore urges this Court to find that the 2001 UM/UIM Offer Form is unenforceable.  Alternatively, Plaintiff urges the Court to at least render this allegedly "offensive" clause unenforceable.  [Id. at 27.]

Moreover, Plaintiff argues that Hawaii's UIM statute is remedial in nature, and was "enacted to provide protection to

persons injured in motor vehicle accidents at the least possible cost when injured by motorists who fail to purchase sufficient coverage." [Id. (citing Kaneshiro, 93 Haw. at 218, 998 P.2d at 498).] Plaintiff also argues that insurance contracts, as contracts of adhesion, must be "construed liberally in favor of the insured in accordance with the reasonable expectations of a layperson." [Id. (some citations omitted) (citing Kaneshiro, 93 Haw. at 218, 998 P.2d at 498).] Based on these principles, Plaintiff asserts that requiring an insurance company to obtain a written rejection of UIM coverage under circumstances similar to the instant case is not overly burdensome. Plaintiff contends that finding otherwise would be in contravention of the public policy that all insured drivers should be afforded the opportunity to purchase UIM coverage to protect themselves and their loved ones. Plaintiff therefore urges the Court to find that the 2001 UM/UIM Offer Form is unenforceable as to the purportedly separate 2004 and 2008 policies. [Id.]

Plaintiff next criticizes GEICO's contention that the addition of new vehicles to an existing policy is contemplated in the GEICO Policy. Plaintiff asserts that such a provision actually "refers to different situations where the insured neglects to purchase another policy for his/her newly acquired vehicle, or the newly acquired vehicle is a replacement for a vehicle in the policy." [Id. at 28.] According to Plaintiff,

22

because Mr. Lee "promptly purchased" automobile insurance for the Lees' third and fourth vehicles, [Clarence Aff. at ¶¶ 6, 9,] the GEICO Policy's provision contemplating the addition of vehicles is inapplicable to the instant case. [Id. at 28-29.]

With regard to this same provision, Plaintiff appears to argue that, regardless of the GEICO Policy's anticipation of newly purchased vehicles, GEICO still has a duty to make a new offer of UM/UIM coverage in the event of a material change. Plaintiff states, "[w]hen [GEICO] argues that the anticipation of newly purchased vehicles in the policy makes the event a non-material change, it rests on the faulty premise that fails to account for persons who will be driving the newly acquired vehicle." [Id. at 29.] Plaintiff then argues that the simultaneous addition of a newly licensed driver and purchase of insurance for an additional vehicle constitute a material change, requiring a new offer of UM/UIM coverage. [Id.]

Plaintiff asserts that GEICO's distinction between an additional insured and an additional driver is a "superficial distinction." [Id.] Plaintiff argues that the "only relevant fact is that Karen was added to the policy as a newly licensed teenage driver[.]" [Id.]

### F.   The *Mollena* Requirements of a UIM Coverage Offer

Plaintiff next contends that the 2001 UM/UIM Offer Form fails to meet the legal standards set by Hawai`i UM/UIM statutes

23

and <u>Mollena</u>.[7]  Plaintiff asserts that Mr. Lee only recalls being
told that rejecting UM/UIM coverage would result in lower
premiums.  [Clarence Aff. at ¶ 3.]  Plaintiff points out that
Exhibit B attached to the Motion, titled "Uninsured Motorists
(UM) & Underinsured Motorist (UIM) Coverages", appears to be
pages three and four of a four-page document, and that GEICO has
not produced pages one and two.  Plaintiff offers the Hawaii
Mandatory & Optional Coverage Selection Form as an example of
provisions that may be contained within the first two omitted
pages.  [<u>Id.</u> at 30 (citing Pltf.'s Counsel Decl., Exh. 10).]
Assuming that these pages properly represent the provisions in
the omitted pages of Exhibit B Plaintiff asserts that the 2001
UM/UIM Offer Form fails the <u>Mollena</u> standard because it "lumps
all optional coverages together, taking away the importance of
the UM/UIM offering." [<u>Id.</u>]

        Although Plaintiff concedes that GEICO satisfied the
first two <u>Mollena</u> requirements, Plaintiff alleges that GEICO
failed to intelligibly advise Mr. Lee of the nature of UM/UIM
coverage.  In support of this argument, Plaintiff contends that,
even with the advice and expertise of the GEICO agent, Mr. Lee's
insurance selections did not provide any real protection for the
Lee family.  Plaintiff asserts that "the Lee family would have

---

        [7] See Discussion, Section II for the recitation of the
<u>Mollena</u> four-factor analysis.

been better protected with a $50,000 bodily injury limit together with $50,000 UM/UIM for about the same policy premium as $100,000 bodily injury only policy." [Id. at 30-31.]

Plaintiff next contends that GEICO failed the final requirement under Mollena to include the fact that UM/UIM coverage is available for a modest increase in premium in the 2001 UM/UIM Offer Form.  GEICO's agent told Mr. Lee that "rejecting UM/UIM would result in cheaper premium payments[,]" which, according to Plaintiff, does not satisfy the fourth requirement.  [Id. at 31.]  Plaintiff also argues that GEICO did not satisfy the fourth Mollena requirement because "declaration pages and notices mailed to the Lees' home with the words 'Insured Rejects' satisfy the UM/UIM offering requirements under the statute." [Id. (citing Mem. in Supp. of Motion at 1).[8]]

**G.    Unfair and Deceptive Trade Practice**

Plaintiff claims that GEICO's conduct violates Haw. Rev. Stat. Chapter 480.  The 2001 UM/UIM Offer Form contains the following language: "[box to check] I reject Underinsured Motorist Coverage on all vehicles insured.  You must sign here to acknowledge your rejection of the Underinsured Motorist Coverage." [Pltf.'s Counsel Decl., Exh. 1 at 3-4 (emphasis in original).]  Mr. Lee checked this box and signed the line next to

---

[8] Plaintiff's citation appears to be incorrect, as the referenced page of GEICO's Motion does not discuss any notices mailed to the Lees.

this provision.  At that time, Mr. Lee was insuring only the Lees' first two vehicles under the GEICO Policy.  Plaintiff asserts, however, that GEICO uses the underlined portion of the provision to actually read, "'all vehicles insured now and in the future.'"  [Pltf.'s Opp. at 33.]  Plaintiff argues that this practice by GEICO is unfair, deceptive, and "not what the Lee family bargained for."  [Id.]  Plaintiff contends that, although her UIM claim is lawful, GEICO committed UDAPs by continuing to deny, delay, and litigate.  Plaintiff therefore argues that she is entitled to treble damages under Haw. Rev. Stat. Chapter 480. [Id.]

> ### G.   Intentional/Negligent Infliction of Emotional Distress

Plaintiff claims that, under Hawai`i law, GEICO is liable for her emotional distress resulting from the denial of her claim for UIM benefits.  Plaintiff asserts that the denial of benefits, in addition the physical pain that she suffers on a weekly basis from the subject collision, causes her "constant and severe" emotional distress.  [Id. at 34.]

Accordingly, Plaintiff urges the Court to deny the Motion.  Plaintiff argues that the Court should instead order GEICO to pay Plaintiff stacked UM/UIM coverage with a limit of $100,000 for each vehicle under the GEICO Policy, totaling $400,000.  [Id.]

## III. GEICO's Reply

A.    **Claims Raised for the First Time**

GEICO maintains that claims not in the Complaint are not properly before this Court for summary judgment.  GEICO emphasizes the fact that, as the moving party, it is "only required to address matters 'in the record.'"  [GEICO's Reply at 2 (citing Fed. R. Civ. P. 56(c)).]  Accordingly, GEICO urges the Court to disregard Plaintiff's arguments regarding GEICO's initial offer of UIM coverage to Mr. Lee and the addition of Karen as a driver to the GEICO Policy.  [Id.]

GEICO further asserts that "'[a] pleading that states a claim for relief must contain a statement' sufficient to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  [Id. (alteration in GEICO's Reply) (quoting Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).]  GEICO recognizes that it had independent information regarding the addition of Karen as a driver to the GEICO Policy, but GEICO takes issue with the fact that it did not have notice that Plaintiff would rely on this fact for her argument that a material change took place.  GEICO also asserts that Plaintiff did not provide notice that she would be challenging the content of the 2001 UM/UIM Offer Form.  [Id. at 2-3.]

GEICO therefore urges the Court to disregard these claims.  GEICO, however, argues that, even if the Court considers

27

Plaintiff's new claims, the Court shout grant the Motion.

B.   **GEICO's 2001 Offer of UIM Coverage**

GEICO reasserts that it fulfilled all four requirements for a legally sufficient offer of UIM coverage as set forth in Mollena when Mr. Lee purchased the GEICO Policy in 2001.

GEICO contends that, by providing a UIM coverage explanation in the 2001 UM/UIM Offer Form, GEICO intelligibly advised the Lees of the nature of UIM coverage.  GEICO argues that Hawai`i law does not require insurers to provide an explanation of UIM coverage on a form separate from other types of coverages. Furthermore, GEICO asserts that its agent's oral representation to Mr. Lee that "'rejecting UM/UIM would result in cheaper premium payments' was accurate . . . and did not negate the written explanation of UIM."  [Id. at 4 (quoting Pltf.'s Opp. at 31).]

GEICO argues that it also satisfied the fourth Mollena requirement, apprising the Lees that UIM coverage was available for a relatively modest increase in premium, by showing Mr. Lee the specific costs of various levels of GEICO's UIM coverage options.  In response to Plaintiff's critique that GEICO did not use the exact phrase, "'available for a modest increase in premium,'" GEICO argues that the "Mollena test does not require 'the use of any particular words to convey the necessary information that the insured may purchase the increased coverage

28

for a small additional amount.'" [Id. at 5 (quoting Pltf.'s Opp.
at 31; Taruc v. State Farm Mutual Auto. Ins. Co., 578 N.E.2d 134,
139 (Ill. App. Ct. 1991)).]  GEICO emphasizes that the focus of
the fourth Mollena requirement is to allow insureds the
opportunity to evaluate the cost of coverage, not to require
insurers to repeat a specific phrase.  GEICO therefore argues
that it apprised the Lees that UIM coverage was available for a
relative modest increase in premium by advising Mr. Lee of the
exact costs associated with GEICO's available UIM coverage
options.  [Id. at 5-6 (citing Macabio v. TIG Insurance Co., 87
Haw. 307, 314, 316, 955 P.2d 100, 107, 109 (Haw. 1998); Ranger v.
State Farm Ins. Co., 333 F. Supp. 2d 935, 940 (D. Hawai`i
2004)).]

C.   **Plaintiff's Interpretation of *Kaneshiro***

According to GEICO, "the Kaneshiro court *did not* hold
that the addition of a vehicle to the policy was a material
change." [Id. at 6-7 (emphasis in original).]  In a footnote,
GEICO points out that the Kaneshiro court characterized the
insurance coverage for new vehicles as being added to the
existing policy, not as new insurance policies.  GEICO contends
that the Kaneshiro court focused more on the substitution of the
named insureds of the subject policy, and less on the addition of
the second vehicle, when evaluating the significance of the
impact on the legal relationships and obligations between the

29

insured and the insurer.  Although the Kaneshiro court may have

found the change from a single-vehicle to a multi-vehicle policy

to be noteworthy, GEICO argues that this point is inapplicable to

the instant action because the Lees' GEICO Policy was always a

multi-vehicle policy.  GEICO therefore argues that the Lees'

subsequent addition of vehicles to their already multi-vehicle

policy has an even less significant impact on the legal

relationship and obligations between GEICO and the Lees.  [Id. at

8 & n.2 (citing Kaneshiro, 93 Haw. 210, 219-20, 998 P.2d at 490,

499-500).]

     GEICO contests Plaintiff's argument that, under

Kaneshiro, "'insurance premiums are vital in assessing whether a

material change has been made to the policy.'"  [Id. at 8

(quoting Pltf.'s Opp. at 17).]  Instead, GEICO asserts that the

Kaneshiro court noted the increase in premium without commenting

upon its significance.  GEICO contends that changes in premium

have little significance in the determination of a material

change because "[s]uch variations in premium have no bearing on

the privity between insured and insurer or the initial decision

to reject UIM coverage."  [Id. at 8-9.]

     GEICO also contests Plaintiff's assertion that the

Kaneshiro court approved, followed, or adopted, Donaghey.  GEICO

contends that the Kaneshiro court actually gave weight to cases

in favor of GEICO's position, like Makela v. State Farm Ins. Co.,

497 N.E.2d 483, 489 (Ill. Ct. App. 1986), where the Illinois Court of Appeals held that "'the addition of a vehicle to a multi-vehicle policy did not require a new offer of coverage.'" [Id. at 9 (quoting Kaneshiro, 93 Haw. at 217, 998 P.2d at 479 (citing Makela, 497 N.E.2d at 490-91)).]  GEICO also contends that the Kaneshiro court's approval of Lewis v. Lenard, 694 So. 2d 574, 577 (La. Ct. App. 1997), is favorable to its position. GEICO asserts that, because the Lewis court found that the removal of vehicle from an insurance policy does not constitute a material change, the addition of a vehicle cannot constitute a material change.  [Id. at 10.]  GEICO therefore argues that Plaintiff has misinterpreted Kaneshiro.

   D.   **The Addition of a Driver**

        If the Court considers Plaintiff's argument that the addition of Karen to the GEICO Policy constituted a material change, GEICO argues that it did not constitute a material change.  GEICO bases its argument on the distinction between drivers and named insureds for the purposes of automobile insurance, and the fact that the Lees merely added Karen as a driver and not an insured.  GEICO asserts that, because Karen was added as a driver who was subject to the Lees' decisions of coverage, adding her to the GEICO Policy did not have any impact on the legal relationship between the parties.  [Id. at 11.]

E.  __The Additions of Vehicles__

GEICO asserts that Plaintiff's characterization of the insurance coverage purchased for the Lees' third and fourth vehicles as separate insurance policies is meritless.  According to GEICO, Plaintiff has admitted that these vehicles were added to the Lees' existing GEICO Policy.  [Id. at 12 (citing Complaint at ¶¶ 17, 20).]  GEICO also refers to Plaintiff's characterization as "illogical" because would mean that Mr. Lee was carrying two or three distinct policies at the same time. [Id. at 12-13.]

F.  __Public Policy__

GEICO argues that public policy does not support an award of UIM benefits for Plaintiff when the Lees explicitly rejected, and never paid for, UIM coverage.  GEICO contends that it repeatedly sent the Lees renewal packets, which indicated that the Lees had rejected UIM coverage.  GEICO argues that "[l]aypersons would reasonably expect that they _would not_ receive coverage that they had rejected in writing and never paid for." [Id. at 13 (emphasis in original) (citing Kaneshiro, 93 Haw. at 220, 998 P.2d at 500).]

As to Plaintiff's citation to Mollena "for the proposition that repeat offers of UIM coverage would not be cost prohibitive[,]" [id. (quoting Pltf.'s Opp. at 22-23),] GEICO points out that the Mollena court was actually interpreting the

predecessor of Haw. Rev. Stat. § 431:10C-301, which mandated a
new offer of UIM coverage with "every policy 'delivered, issued
for delivery, or renewed.'" [Id. (quoting Mollena, 72 Haw. at
325, 816 P.2d at 973-74).]  GEICO asserts that the State
Legislature, in response to Mollena, subsequently "amended the
statute to specify that written rejection of UIM coverage was
only required when a policy was first issued or (for pre-existing
policies) first renewed." [Id. at 14 (emphasis in GEICO's Reply)
(citing Kaneshiro, 93 Haw. at 219, 998 P.2d at 499).]   GEICO
therefore contends that the current version of § 431:10C-301
reflects a public policy which does not support a finding that
Plaintiff is entitled to UIM benefits under the GEICO Policy.
[Id.]

         In sum, GEICO argues that, because the Lees made no
material changes to the GEICO Policy since Mr. Lee purchased it
in 2001 on behalf of Plaintiff, GEICO was not required to re-
offer UIM coverage.  GEICO argues, therefore, that the GEICO
Policy does not provide UIM benefits.  GEICO further asserts
that, because Plaintiff is not entitled to UIM benefits, her bad
faith claims must also fail as a matter of law.  [Id. at 14-15.]

**IV.  Plaintiff's Cross Motion**

         In her Cross Motion, Plaintiff primarily asserts the
same arguments contained in Plaintiff's Opposition.

         In addition to her previous arguments, Plaintiff

further contends that the Lees purchased "two **new** automobile insurance policies for their third and fourth vehicles[,]" which, together with the addition of Karen, a newly licensed teenage driver, constituted a material change to the GEICO Policy.[9] [Mem. in Supp. of Cross Motion at 9 (emphasis added).]  Again, Plaintiff points out that the Lees' purchase of new insurance policies for their third and fourth vehicles increased their premium amount.  Similar to her previous arguments, Plaintiff contends that the resulting increases in the Lees' premiums significantly impacted the legal relationship and obligations between GEICO and the Lees so as to constitute a material change. [Id. at 14-15.]  Plaintiff further argues that, in failing to acknowledge this material change, GEICO also failed to make a legally sufficient offer for UM/UIM coverage to the Lees, pursuant to Mollena.  Plaintiff therefore asserts, "[w]hen an insurance company fails to make an adequate offer of UM/UIM coverage, claimants are entitled to stacked UM/UIM coverage 'as a

---

[9]  Plaintiff refers to the insurance purchased for the Lees' third and fourth vehicles as separate policies.  Plaintiff is unclear as to whether she is arguing that Karen was added to the Lees' existing GEICO Policy, or if Karen was added to the purported new insurance policy purchased for the Lees' fourth vehicle.  See, e.g., Mem. in Supp. of Cross Motion at 11 (stating both that the Lees added Karen to "their policy," and that Karen was "added to the [fourth] policy at the time of the purchase on July 23, 2008").  In many instances, Plaintiff merely states that Karen was added to "the policy," without indicating the specific policy to which she is referring.  See, e.g., id. at 12.

matter of law' for amounts equal to bodily injury limits." [Id. at 9 (quoting Mollena, 72 Haw. at 324, 816 P.2d at 974).]

Plaintiff urges the Court to declare that GEICO must pay her stacked UM/UIM coverage with a limit of $100,000 for each of the Lees' four vehicles insured under the GEICO Policy, totaling $400,000.  Plaintiff further urges the Court to grant the Cross Motion with respect to her remaining claims.

## V.    GEICO's Opposition

In GEICO's Opposition, GEICO primarily relies on the same arguments set forth in the Motion and GEICO's Reply.

### A.    Initial Rejection of UIM Coverage

GEICO maintains that it intelligibly advised the Lees of the nature of UIM coverage.  According to GEICO, satisfaction of this requirement entails providing a "'definition or examples or description of the nature of underinsured motorist coverage.'" [GEICO's Opp. at 8 (quoting Mollena, 72 Haw. at 322, 816 P.2d at 972).]  GEICO contends that this requirement is fulfilled by a provision contained in the 2001 UM/UIM Offer Form, which provides:

> **Uninsured Motorists (UM) & Underinsured Motorist (UIM Coverages)**
>
> . . . .
>
> **Underinsured Motorist** applies to you, your resident relatives and occupants of the insured auto.  Underinsured Motorist Coverage is separate and distinct coverage from Underinsured [sic]

> Motorists Coverage.  Underinsured Motorist
> Coverage provides protection to persons insured
> under this policy who are legally entitled to
> recover damages for bodily injury, including
> death, arising from accidents with motorists who
> have insurance but the coverage limits under all
> bodily injury policies applicable at the tie of
> the accident are less than the total damages for
> bodily injury or death resulting from the
> accident.

[Id. at 9 (quoting Langley Decl., Exh. B (2001 UM/UIM Offer Form)

at 3).]  In addition to this provision, GEICO asserts that its

argument is supported by Mr. Lee's recollection that the GEICO

agent also orally informed Mr. Lee that purchasing UM/UIM

coverage would result in an increase in his insurance premiums.

GEICO thus argues that it intelligibly advised Mr. Lee about the

nature of UIM coverage.  [Id. at 10 (citing Clarence Aff. at ¶

3).]

According to GEICO, Plaintiff argues that Mr. Lee was

not sufficiently advised on the nature of UIM coverage because

Plaintiff believes, in retrospect, that Mr. Lee made a poor

decision to reject the UIM coverage.  GEICO asserts that this

argument fails because § 431:10C-301 and the requirements as

stated in Mollena are "designed to preserve an insured's right to

choose whether to pay for UIM coverage, and the ultimate wisdom

of the insured's decision is irrelevant."  [Id. at 11 (citing

Kaneshiro, 93 Haw. at 219, 998 P.2d at 499).]  GEICO further

challenges Plaintiff's argument that the GEICO Policy provided no

protection for the Lees, pointing out that Mr. Lee could have

36

chosen alternatives to protect his family such as no-fault coverage, health insurance, or even setting aside the money he saved through the lower premiums that resulted from his rejection of the UIM coverage.  GEICO argues that, if the State Legislature believed that UIM coverage was always the best protection for insureds, this belief would be reflected in the statutory provisions.  [Id. (citing Mem. in Supp. of Cross Motion at 24).]

GEICO also maintains that its agent apprised Mr. Lee of the availability of UIM coverage for a relatively modest increase in premium by providing him with the exact costs of various levels of UIM coverage.  GEICO asserts, that, for example, it gave a coverage form to Mr. Lee, which specified that the "UIM limits of $100,000 per person/$300,000 per accident would cost an additional $35.50 for non-stacked coverage or $37.50 for stacked coverage."  [Id. at 12 (citing Langley Decl., Exh. B at 3).]

GEICO asserts that, by providing Mr. Lee with the exact amounts of premium increases, GEICO permitted him to reach his own conclusions about the value of UIM coverage.  [Id. at 13-14.] GEICO contends "the focus of the fourth [Mollena] factor is on allowing insureds to evaluate the cost of coverage, *not* on the repetition of any specific phrase."  [Id. at 13 (emphasis in original) (citing Macabio v. TIG Insurance Co., 87 Haw. 307, 314, 316, 955 P.2d 100, 107, 109 (Haw. 1998)).]

GEICO further argues that, because Mr. Lee executed a valid rejection of UIM coverage at the time he purchased the GEICO Policy, his rejection is also valid against Plaintiff. GEICO points out that, "[u]nder Hawaii law, a motor vehicle policy does not include UM/UIM coverage 'if any named insured in the policy' rejects such coverage in writing." [Id. at 14 (quoting Haw. Rev. Stat. § 431:10C-301(b)(3), (b)(4)).] GEICO therefore asserts that Mr. Lee's valid rejection of UIM coverage precludes Plaintiff from recovering such benefits for injuries sustained in the subject collision. [Id. at 14-15.]

Based on these arguments, GEICO maintains that it made a legally sufficient offer of UIM coverage to Mr. Lee, who later executed a valid rejection of GEICO's offer. Accordingly, GEICO urges this Court to find that the GEICO Policy did not afford Plaintiff UIM coverage from the time that it was initially issued. [Id. at 15.]

### B.   Whether Other Offers Were Required

Again, GEICO argues that, because Karen was only a driver under the GEICO Policy, not a named insured, the addition of Karen to the GEICO Policy did not constitute a material change, and Mr. Lee's initial rejection of UIM coverage controls. [Id. at 17-18.] GEICO contends that its argument is further supported by the fact that Karen was an insured under the GEICO Policy before the Lees formerly added her as a driver. GEICO

38

asserts that Karen, as the Lees' "resident relative" under the
GEICO Policy, was entitled to bodily injury liability insurance
under the GEICO Policy.  [Id. at 18 (citing Langley Decl., Exh. C
at 5).]  GEICO emphasizes that "Karen's status as a resident
relative would also have qualified her for UIM coverage if her
parents had not rejected such coverage."  [Id. (citing Langley
Decl., Exh. C at 3).]  Because of Karen's previously existing
status as a "resident relative," GEICO asserts that adding her as
a driver had "no impact on the legal relationship between GEICO
and the Lees," and did not constitute a material change.  [Id. at
19.]

     GEICO then contends that Plaintiff's cited case,
Matheny v. Glen Falls Insurance Co., 152 F.3d 348 (5th Cir.
1998), "does not reflect Hawaii law[,]" and urges the Court to
disregard it.  [Id.]  Alternatively, GEICO argues that, even if
the Court were to apply Matheny, the addition of Karen as a
driver still would not constitute a material change to the GEICO
Policy.  According to GEICO, the Matheny court's finding of a
material change relied heavily upon the increase in the policy
premium.  GEICO argues that, in the instant case, "there is no
evidence of an increase in premiums attributable to the addition
of Karen as a driver on the [GEICO Policy] . . . in 2007."  [Id.
at 20 (citing Cindy Aff. at ¶ 5).]  GEICO therefore contends that
the addition of Karen as a driver to the GEICO Policy did not

39

have a significant impact on the legal relationship between GEICO
and the Lees so as to constitute a material change and require
GEICO to make a new offer of UIM coverage.  [Id.]

        GEICO further maintains, for the same reasons as set
forth in its Motion, that the addition of a vehicle to an
automobile insurance policy does not constitute a material
change.  GEICO claims that this assertion is supported by
Kaneshiro.  Although Kaneshiro also concerned the addition of a
vehicle to an insurance policy, GEICO draws attention to the
Kaneshiro court's indication that "there would have been no
significant impact on the legal relationship between the parties
if the former named insured had remained a named insured . . . ."
[Id. at 21 (citing Kaneshiro, 93 Haw. at 220, 998 P.2d at 493).]
GEICO interprets the Hawai`i Supreme Court's comment to suggest
that "the mere addition of a vehicle would not have had a
significant impact on the legal relationship between the
parties."  [Id.]

        GEICO contests Plaintiff's argument that, under
Kaneshiro, an increase in premium significantly impacts the legal
relationship between the insurer and the insured.  Instead, GEICO
asserts that the Kaneshiro court merely mentioned in passing that
the vehicle was added to the insurance policy with an associated
increase in premium.  GEICO argues that the Kaneshiro court's
focus was actually on the resulting impact of the substitution of

40

the named insured, which ultimately did not by itself constitute a material change.  GEICO therefore contends that, pursuant to Kaneshiro, the "mere addition of a vehicle does not constitute a material change."  [Id. at 21-22 (citing Kaneshiro, 93 Haw. at 219-21, 998 P.2d at 499-501).]

GEICO next points out that, had the Lees purchased UM/UIM coverage, they would have been covered in any vehicle, regardless of whether or not it was insured by the GEICO Policy. GEICO argues that, because the Lees rejected UIM coverage, the addition of vehicles to the GEICO Policy was irrelevant and had no impact on the legal relationship between GEICO and the Lees with regard to UIM coverage.  [Id. at 22 (citing Dines v. Pacific Ins. Co., Ltd., 78 Haw. 325, 328, 893 P.2d 176, 179 (Haw. 1995)).]  GEICO notes that the GEICO Policy anticipated the addition of vehicles during the policy period, and thus the addition of the third vehicle and the addition of the fourth vehicle should not be considered material changes.  Accordingly, GEICO maintains that the Lees' addition of vehicles to the GEICO Policy constituted "renewal" or "replacement" policies, and did not require GEICO to make a new offer of UM/UIM coverage.  [Id. at 22-23 (citing Langley Decl., Exh. C at 3; Makela v. State Farm Ins. Co., 497 N.E. 2d at 483, 488-89 (Ill. Ct. App. 1986); Kaneshiro, 93 Haw. at 217, 998 P.2d at 497).]

C.   **Public Policy**

In addition the public policy arguments contained in its Motion, and in response to Plaintiff's contention that the extent of GEICO's expenses in making a new offer of UM/UIM coverage to the Lees would have been limited to mailing and printing costs, GEICO argues that its "cost concern actually stems from obtaining the insured's written rejection of UIM[.]" [Id. at 24.]   GEICO reasons that its insureds, who have already rejected UIM coverage, would often fail to return such subsequent rejection forms after making insignificant changes to their insurance policies.   GEICO argues that, because UM/UIM coverage is implied by law if the insured does not provide written rejection, see Mollena, 72 Haw. at 326, 816 P.2d at 974, an unrequested premium increase for implied UIM coverage, where an insured had previously made a valid rejection, "would lead to confusion, frustration, and expenses on all sides." [Id. at 25.] GEICO therefore contends that, like the instant case, "where the *very same insureds* have made the affirmative decision to reject UIM coverage, public policy favors avoiding the expense and inconvenience (to both insureds and insurers) of obtaining written rejection of UIM each time a new driver or car is added to the policy." [Id. at 26 (emphasis in original).]

GEICO reasserts that the Lees executed a valid rejection of UIM coverage, and concedes that the State

Legislature has endorsed the Lees' right to do so.  GEICO adds
that the Lees also have the right to reject UIM coverage without
being required to reconsider this decision every time the GEICO
Policy is renewed or modified in a way that does not affect their
initial rejection.  Essentially, GEICO argues that "significant
public policy considerations favor *not* requiring a new written
rejection of UIM coverage each time a driver or vehicle is added
to an existing policy."  [Id. (emphasis in original).]

## VI.  **Plaintiff's Reply**

        Plaintiff reasserts the same arguments made in
Plaintiff's Opposition and her Cross Motion.  Plaintiff urges the
Court to grant her Cross Motion based on the fact that GEICO's
Opposition fails to acknowledge that Karen was added to the
policy that the Lees purchased for their fourth vehicle on July
23, 2008.  Plaintiff asserts that the arguments in GEICO's
Opposition are meritless, and she criticizes GEICO for not
including affidavits of the GEICO insurance agents who sold the
Lees the GEICO Policy in 2001, as well as the additional coverage
in 2004 and 2008.  [Pltf.'s Reply at 2.]

        Plaintiff contends that the arguments GEICO includes in
GEICO's Opposition lack legal or factual basis.  [Id. at 4.]
Plaintiff points to GEICO's "reference to an 'alleged oral
representation' by [a GEICO] agent" that was made in response to
Plaintiff's allegation that the GEICO agent gave Mr. Lee a

deficient explanation of UIM coverage.  [Id. at 4 (quoting GEICO's Opp. at 1).]  Plaintiff asserts that, because GEICO's reference is not substantiated by an affidavit or declaration, Plaintiff's argument that the 2001 UM/UIM Offer Form was a legally insufficient offer of UM/UIM coverage is effectively unchallenged.  [Id.]

Plaintiff asserts that GEICO's argument that the Court should disregard Plaintiff's claim that the addition of Karen to the GEICO Policy constituted a material change is legally baseless.  Plaintiff argues that, because this Court must follow Hawai`i law, which has adopted a "notice pleading" standard, Plaintiff is not required to plead precise legal theories. Plaintiff asserts that GEICO has always possessed the documents that establish that Karen was added to the policy on July 23, 2008.  Plaintiff therefore contends that it "would be incumbent upon [GEICO] to internally investigate the material change allegation for July 23, 2008."  [Id. at 5.]

In response to GEICO's argument that the 2001 UM/UIM Offer Form's description of coverage was legally sufficient, Plaintiff argues that the form itself contradicts this argument. According to Plaintiff, the language, "'the explanations of these coverages are intended only to be brief descriptions[,]'" contradicts the argument that the 2001 UM/UIM Offer Form is sufficient as an offer of UM/UIM coverage.  [Id. at 5-6 (quoting

Langley Decl., Exh. B at 4).] Moreover, Plaintiff criticizes GEICO's claim that it "'prominently offers UIM coverage'" by pointing out that UM and UIM coverage are both listed at the bottom of the list of GEICO's optional coverages. [Id. (citing Langley Decl., Exh. B at 3).] Plaintiff asserts that, because UM and UIM coverage are listed at the bottom of the non-alphabetical list, readers would get the impression that these optional coverages are the least important. Plaintiff argues that placing UM and UIM coverage options at the top of the list would highlight their prominence. [Id.]

Plaintiff next points to GEICO's argument that Mr. Lee made a "'poor choice'" in rejecting UM/UIM coverage. [Id. at 7 (quoting GEICO's Opp. at 10).] Plaintiff asserts that GEICO's argument, coupled with Plaintiff's contention that Mr. Lee relied on the advice of the GEICO agent, leads to the conclusion that the GEICO agent gave Mr. Lee poor advice. Plaintiff states, "[i]t does not make sense that a married business man with an electrical engineering degree and three minor children would choose to reject UIM and purchase only $100,000 unless he was given 'poor advice.'" [Id.]

Plaintiff also argues that the Kaneshiro court cited Matheny with approval, and that the latter rejects GEICO's argument that Karen was already an insured as a resident relative of the Lees, the named insureds under the GEICO Policy.

45

According to Plaintiff, "[t]he Matheny Court rejected that argument and found that 'the risk of injury caused by an uninsured or underinsured driver to a passenger is not necessarily the same faced by an inexperienced new driver.'" [Id. at 7-8 (quoting Matheny, 152 F.3d at 354).]  Pursuant to Matheny, Plaintiff offers the fact that the addition of the fourth vehicle and Karen to the GEICO Policy led to a forty-seven percent increase from the two-vehicle policy.  Plaintiff contends that this fact is undisputed and entitles her to summary judgment.  [Id. at 8.]

With regard to the parties' dispute over whether any increase in premium attributed to the addition of Karen to the GEICO Policy, Plaintiff asserts that the rules of summary judgment require GEICO to come forward with evidence to the contrary.  Plaintiff contends that she has met her burden with affidavits and policy declaration sheets, whereas GEICO has just made unsubstantiated denials of Plaintiff's claims.  [Id.]

Plaintiff contests GEICO's argument that the Kaneshiro court noted the relativity of an increase in premium to the impact on the legal relationship and obligations between the parties "'in passing.'"  [Id. at 8-9 (quoting GEICO's Opp. at 21).]  Plaintiff argues that the Kaneshiro court actually heavily relied on the increase in premium in its finding a significant impact on the legal relation and obligations between the

plaintiff insured and the defendant insurer.  [Id. at 9.]

Plaintiff contends that GEICO has only made conclusory allegations in response to her argument that the Lees purchased separate policies for the Lees' third and fourth vehicles, as opposed to merely adding them to the existing GEICO Policy. Plaintiff argues that such conclusory allegations are insufficient to deny summary judgment.  Plaintiff contends, "[i]t is commonly known that 'each' vehicle has its own policy from which its premium is derived."  [Id. (citing GEICO's Opp. at 21 n.8).]

Again, Plaintiff asserts that the Hawai`i Supreme Court's opinion in Mollena rejects GEICO's public policy argument that reducing costs of insurers will, in turn, result in lower costs for consumers.  [Id. at 10 (citing GEICO's Opp. at 26).]

Furthermore, Plaintiff contends that "[c]overage and bad faith issues are separate and an insured is not precluded from bringing a bad faith claim even where there is no coverage liability on the underlying policy."  [Id. (citing Enoka v. AIG Hawaii Ins. Co., 109 Haw. 537 (2006)).]  According to Plaintiff, GEICO's argument is that, if her coverage claim fails, all of her claims must fail.  Plaintiff interprets GEICO's argument to mean that, if her coverage claim is successful, then her other claims must also succeed.

47

Accordingly, Plaintiff urges the Court to grant her Cross Motion on all claims.  [Id. at 10-11.]

**DISCUSSION**

The standard for summary judgment is well-known to the parties and does not bear repeating here.  See, e.g., Rodriguez v. Gen. Dynamics Armament & Technical Prods., Inc., 696 F. Supp. 2d 1163, 1176 (D. Hawai`i 2010).

The Court also notes that GEICO removed the instant case based on diversity jurisdiction.  [Notice of Removal at 2.] "Federal courts sitting in diversity apply state substantive law and federal procedural law." Estate of Rogers v. Am. Reliable Ins. Co., Civil No. 10-00482 SOM/RLP, 2011 WL 2693355, at *3 (D. Hawai`i July 8, 2011) (citing Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotations omitted))).

The Court now turns to the merits of Plaintiff's claims.

**I.   Whether There Were Material Changes to the GEICO Policy**

GEICO's and Plaintiff's respective motions focus on

whether or not Plaintiff is entitled UIM benefits under the GEICO Policy.  This district court has recognized:

> The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 219 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration); Crawley v. State Farm Mut. Auto. Ins. Co., 90 Haw. 478, 483, 979 P.2d 74, 79 (App. 1999).  The insurer has the burden of establishing the applicability of an exclusion. See Sentinel, 76 Haw. at 297, 875 P.2d at 914.

Id. at *3.

The Hawai`i Supreme Court has stated: "[t]he objectively reasonable expectations of [policyholders] and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.  Those 'reasonable expectations' are derived from the insurance policy itself . . . ."  Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co., 117 Hawai`i 357, 368, 183 P.3d 734, 745 (2007) (some alterations in original) (citations and some quotation marks omitted).

The relevant Hawai`i UM/UIM statute states, in pertinent part:

> If uninsured motorist coverage or underinsured motorist coverage is rejected, pursuant to section 431:10C-301(b):
>
>     . . . .
>
>     (2) No further offers or notice of the availability of uninsured motorist coverage and

underinsured motorist coverage are required to be made in connection with any renewal or replacement policy; and

(3)  The written rejections required by section 431:10C-301(b) shall be presumptive evidence of the insured's decision to reject the options.

Haw. Rev. Stat. § 431:10C-301(e).

The seminal Hawai`i case relating to required offers of UM/UIM coverage is <u>Allstate Insurance Co. v. Kaneshiro</u>, 93 Hawai`i 210, 998 P.2d 490 (2000).  In <u>Kaneshiro</u>, Clyde Kaneshiro ("Clyde") purchased a motor vehicle insurance policy ("Allstate Policy") from the defendant, Allstate Insurance Co. ("Allstate"), on September 1, 1974.  Four years later, Clyde added Ann Kaneshiro ("Ann") as his spouse and an insured driver to the Allstate Policy.  In December 1990, and again on March 1, 1993, Allstate offered Clyde UM/UIM coverage, and Clyde rejected both offers in writing.  <u>Kaneshiro</u>, 93 Hawai`i at 213, 998 P.2d at 493.

On March 3, 1994, Clyde requested several changes to the Allstate Policy.  Up to this point, Clyde was the only named insured, although Ann and Clyde's daughter, Kristy, were listed as drivers.  Clyde informed his Allstate agent that, because he and Ann were getting a divorce, he wanted to take his name off of the Allstate Policy.  Clyde subsequently signed a release, which deleted himself as a named insured, and made Ann the sole named insured under the Allstate Policy.  While these changes were

50

being implemented, "Allstate did not offer UM/UIM coverage to Clyde or Ann, and Ann did not request or pay for such coverage." Id.

On September 1, 1994, when Ann renewed the Allstate Policy, she also added another vehicle.  On September 10, 1996, Ann sustained injuries in an automobile accident.  Allstate paid her no-fault benefits, but denied her claim for UM/UIM benefits. Id.  "Allstate filed suit in the federal district court, seeking a declaration that [Ann]'s policy did not include UM/UIM coverage on the date of the accident because Clyde's 1993 written rejection was legally sufficient and binding on [Ann]." Id.  The federal district court then certified the following question to the Hawai`i Supreme Court:

> Where a named insured whose spouse is listed as a covered driver under an automobile insurance policy rejects [UM and UIM] coverage in writing in connection with the first renewal of the subject insurance policy after January 1, 1993 and thereafter asks the insurer's agent to remove his name from the policy and to substitute his spouse as the named insured under the policy, and an additional vehicle is added to the policy, is the insurer required to offer [UM and UIM] coverage to the new named insured pursuant to [HRS] § 431:10C-301?

Id. at 212-13, 998 P.2d at 492-93 (alterations in original).  In deciding the certified question, the Hawai`i Supreme Court turned to § 431:10C-301, which governed the Allstate Policy.  Based on the statutory language, "the dispositive issue in this case [was] whether the March 1994 policy issued to [Ann] was a 'renewal' or

'replacement' policy within the meaning of HRS § 431:10C-301(d)
or a policy requiring a new offer of UM/UIM coverage." Id. at
215, 998 P.2d at 495.  The Hawai`i Supreme Court interpreted §
431:10C-301(e) to mean that, "when a material change is made to
an existing policy, the resulting policy is not a 'renewal or
replacement policy' and a new offer of optional UM/UIM coverage
is required." Kaneshiro, 93 Hawai`i at 217, 998 P.2d at 497.

          Pursuant to Kaneshiro, the dispositive issue in the
instant case is whether or not a material change was made to the
GEICO Policy, from the date it was initially purchased until the
date of the subject collision, so as to require GEICO to make a
new offer of optional UM/UIM coverage to the Lees.  Specifically,
the determination of Plaintiff's ability to receive UIM coverage
depends on whether or not the addition of vehicles and/or the
addition of Karen, as a new driver, constituted material changes
to the GEICO Policy.  The Kaneshiro court mentions in its
analysis the fact that vehicles were added to the Allstate
Policy, but this appears to be only in addition to the primary
fact that the named insured changed.  Id. at 220, 998 P.2d at
500.  When Ann replaced Clyde as the sole named insured under the
Allstate Policy, Allstate, in effect, obtained a new client.
Although the Lees' addition of vehicles and a newly-licensed
driver were certainly changes to the GEICO Policy, these changes
are distinguishable from the type of material change to which

Kaneshiro speaks.

Under Kaneshiro, therefore, the mere addition of a driver, as opposed to the replacement of a named insured, does not constitute a material change to an automobile insurance policy.  Both Mr. Lee and Plaintiff appear to have been named insureds under the GEICO Policy since Mr. Lee purchased it on December 13, 2001.  [Pltf.'s Opp. at 7; Pltf.'s Counsel Decl., Exh. 2.]  The Lees added Karen as a driver, not as a named insured, under the GEICO Policy.  [Pltf.'s Counsel Decl., Exh. 2.]  In fact, the Lees remained the only named insureds from the date of purchase through the date of the subject collision.  The addition of Karen as a driver, therefore, did not alter the legal relationship between GEICO and the Lees so as to constitute a material change to the GEICO Policy.  This Court is not persuaded by Plaintiff's citation to Matheny v. Glen Falls Insurance Co., 152 F.3d 348 (5th Cir. 1998), in support of her argument that the addition of a driver constitutes a material change to a policy. Matheny is a case from the Fifth Circuit Court of Appeals, applying Louisiana state law, and is not binding upon this Court. Without more, the addition of vehicles and the addition of Karen to the GEICO Policy were not the type of "material changes" that the Kaneshiro court required.  The Court therefore finds that there are no issues of material fact, and the Court CONCLUDES, as a matter of law, that no material changes were made to the GEICO

Policy which would have required GEICO to make a new offer to purchase UM/UIM coverage to the Lees.  See Fed. R. Civ. P. 56(a).  This Court GRANTS GEICO's Motion as to Plaintiff's First Cause of Action insofar as GEICO is entitled to an order declaring that neither the addition of the Lees' third and fourth vehicles nor the addition of Karen as a covered driver required GEICO to make a new offer of UM/UIM coverage to the Lees.  Plaintiff's Cross Motion is DENIED as to that portion of her First Cause of Action.

## II.  GEICO's Initial Offer of UM/UIM Coverage

The Complaint alleges: "On or about December 13, 2001, Defendant GEICO failed to reasonably inform Mr. Lee the benefits of UM and UIM coverage of his two vehicles other than rejecting the UM and UIM policy would result in 'cheaper premium payments.'"  [Complaint at ¶ 16.[10]]

Based on Plaintiff's Complaint and memoranda, Plaintiff appears to argue that she is entitled to UIM benefits because GEICO's initial offer of UM/UIM coverage on December 13, 2001, which Mr. Lee rejected, was legally insufficient.  [Complaint at ¶ 16; Pltf.'s Opp. at 23-32; Mem. in Supp. of Cross Motion at 19-25.]  The Hawai`i Supreme Court previously identified a four-part

---

[10] Clarence states that "[t]he only recollection I have from that meeting with the [GEICO] agent is that the agent told me that my insurance premium would be cheaper if I signed the paper. I have no recollection of any explanation of uninsured/underinsured motorist insurance . . . ."  [Clarence Aff. at ¶ 3.]

test to determine whether an offer of UM/UIM coverage is legally

sufficient.  Mollena v. Fireman's Fund Ins. Co. of Haw., Inc., 72

Haw. 314, 320, 816 P.2d 968, 971 (1991).

> Under the four-part test, an offer is legally
> sufficient when all of the following are met:  (1) if
> made other than face-to-face, the notification process
> must be commercially reasonable; (2) the limits of
> optional coverage must be specified and not merely
> offered in general terms; (3) the insurer must
> intelligibly advise the insured of the nature of the
> optional coverage; and (4) the insurer must apprise the
> insured that the optional coverage is available for a
> relatively modest increase in premium.

Id. (citing Hastings v. United Pac. Ins. Co., 318 N.W.2d 849

(Minn. 1982)).  Pursuant to Mollena, the insurer bears the burden

of proving that it made a legally sufficient offer of UM/UIM

coverage.  If the insurer is unable to demonstrate that it met

all four parts of the test, "then coverage is implied as a matter

of law."  Id. (citations omitted).

Although Plaintiff admits that GEICO satisfied the

first two requirements of the Mollena test, she argues that GEICO

failed to meet the third and fourth requirements.  [Pltf.'s Opp.

at 30; Mem. in Supp. of Cross Motion at 24.]  Whether or not

GEICO intelligibly advised Mr. Lee of the nature of UM/UIM

coverage, and whether or not GEICO apprised Mr. Lee that such

coverage was available for a relatively modest increase in

premium, are both issues of material fact.  Further, the Court

also notes that the parties have not addressed the issue whether

Plaintiff has timely raised her claims challenging the validity

of the 2001 offer of UM/UIM coverage.

The Court therefore CONCLUDES that summary judgment is improper as to all of Plaintiff's claims based on the validity of the 2001 offer of UM/UIM coverage.  Both GEICO's Motion and Plaintiff's Cross Motion are DENIED as to those claims.

## III. **Plaintiff's Remaining Claims**

Plaintiff's Second Cause of Action alleges that GEICO was negligent in failing to offer Mr. Lee UM/UIM whenever there was a material change to the coverage in the GEICO Policy. [Complaint at ¶ 47.]  The Court finds that the Second Cause of Action does not allege negligence based on the alleged deficiency in the 2001 offer of UM/UIM coverage.  Although paragraph 46 in Plaintiff's Second Cause of Action refers to all prior paragraphs in the Complaint, the specific allegations in Plaintiff's Second Cause of Action refer only to the duty to make a new offer of UM/UIM coverage upon a material change to the GEICO Policy.  In light of the Court's ruling that neither the addition of the Lees' third and fourth vehicles nor the addition of Karen as a covered driver was a material change requiring GEICO to make a new offer of UM/UIM coverage, Plaintiff's Second Cause of Action fails as a matter of law.  GEICO's Motion is GRANTED and Plaintiff's Cross Motion is DENIED as to Plaintiff's Second Cause of Action.

Similarly, insofar as Plaintiff's Third Cause of Action alleges that GEICO breached the insurance contract and/or its contractual warranties by failing to make the Lees a new offer of UM/UIM coverage when there were material changes to the GEICO Policy, that portion of Plaintiff's Third Cause of Action fails as a matter of law.  [Id. at ¶¶ 54-56.]  GEICO's Motion is GRANTED and Plaintiff's Cross Motion is DENIED as to that portion of Plaintiff's Third Cause of Action.  Assuming, arguendo, that Plaintiff's Third Cause of Action also alleges breach of contract/breach of contractual warranties based on deficiencies in the 2001 offer of UM/UIM coverage, the Court finds that there are genuine issues of material fact for reasons set forth in Discussion, Section II.  Both GEICO's Motion and Plaintiff's Cross Motion are DENIED as to that portion of Plaintiff's Third Cause of Action.

Although not clearly stated, it appears that Plaintiff's Fourth Cause of Action and Plaintiff's Fifth Cause of Action are based on both the alleged deficiencies in the 2001 offer of UM/UIM coverage and the failure to make new offers of UM/UIM coverage upon the alleged material changes to the GEICO Policy.  [Id. at ¶ 59 (incorporating all prior paragraphs of the Complaint in Plaintiff's Fourth Cause of Action); id. at ¶ 64 (incorporating all prior paragraphs in Plaintiff's Fifth Cause of Action).]  For the reasons set forth supra, GEICO's Motion is

GRANTED and Plaintiff's Cross Motion is DENIED as to the portion of Plaintiff's Fourth Cause of Action and the portion of Plaintiff's Fifth Cause of Action based on the alleged material changes, and both GEICO's Motion and Plaintiff's Cross Motion are DENIED as to the portion of Plaintiff's Fourth Cause of Action and the portion of Plaintiff's Fifth Cause of Action based on the alleged deficiencies in the 2001 offer of UM/UIM coverage.

As to Plaintiff's Sixth Cause of Action for negligent and/or intentional infliction of emotional distress, in light of this Court's finding that Plaintiff did not allege a negligence claim based on the alleged deficiencies in the 2001 offer of UM/UIM coverage, this Court also finds that Plaintiff's Sixth Cause of Action alleges a negligent infliction of emotional distress claim as to the alleged material changes only, but it alleges an intentional infliction of emotional distress claim as to the alleged deficiencies in the 2001 offer of UM/UIM coverage. For the reasons stated *supra*, GEICO's Motion is GRANTED and Plaintiff's Cross Motion is DENIED as to the portion of Plaintiff's Sixth Cause of Action alleging negligent infliction of emotional distress and the portion of Plaintiff's Sixth Cause of Action alleging intentional infliction of emotional distress based on the alleged material changes in the GEICO Policy.  Both GEICO's Motion and Plaintiff's Cross Motion are DENIED as to the portion of Plaintiff's Sixth Cause of Action alleging intentional

infliction of emotional distress as to alleged deficiencies in the 2001 offer of UM/UIM coverage.

Finally, this district court has recognized that, "[u]nder Hawaii law, a 'claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.'" Mullaney v. Hilton Hotels Corp., 634 F. Supp. 2d 1130, 1152 (D. Hawai`i 2009) (quoting Ross v. Stouffer Hotel Co., 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994)); see also Ribiero v. Safeway, Inc., Civ. No. 09-00175, 2011 WL 5520934, at *2 (D. Hawai`i Nov. 14, 2011) (quoting Mullaney, 634 F. Supp. 2d at 1152). Accordingly, GEICO is entitled to summary judgment as to Plaintiff's Seventh Cause of Action for punitive damages because a claim punitive damages is not a separate cause of action under which Plaintiff can recover. The Court, however, emphasizes that Plaintiff may still be able to recover punitive damages as a remedy, if she can establish that she is entitled to such damages in connection with one of her remaining claims.

GEICO's Motion is GRANTED and Plaintiff's Cross Motion is DENIED as to Plaintiff's Seventh Cause of Action.

## CONCLUSION

On the basis of the foregoing, GEICO's Motion for Summary Judgment, filed on July 11, 2012, is HEREBY GRANTED IN PART AND DENIED IN PART, and Plaintiff's Cross Motion for Summary Judgment, filed on September 5, 2012, is HEREBY DENIED in all

respects.

Specifically, GEICO's Motion is GRANTED as to: 1) the portion of Plaintiff's First Cause of Action seeking a declaration that the addition of the Lees' third vehicle and fourth vehicle, and/or the addition of Karen Lee as a covered driver were material changes requiring GEICO to make a new offer of UM/UIM coverage to the Lees; 2) Plaintiff's Second Cause of Action; 3) the portion of Plaintiff's Third Cause of Action, Plaintiff's Fourth Cause of Action, and Plaintiff's Fifth Cause of Action based on the alleged material changes to the GEICO Policy; 4) the portion of Plaintiff's Sixth Cause of Action alleging negligent infliction of emotional distress; 5) the portion of Plaintiff's Sixth Cause of Action alleging intentional infliction of emotional distress based on the alleged material changes to the GEICO Policy; and 6) Plaintiff's Seventh Cause of Action.

GEICO's Motion is DENIED WITHOUT PREJUDICE as to: 1) the portion of Plaintiff's First Cause of Action seeking a declaration that the initial offer of UM/UIM insurance to Mr. Lee in 2001 was invalid; 2) the portion of Plaintiff's Third Cause of Action, Plaintiff's Fourth Cause of Action, and Plaintiff's Fifth Cause of Action based on the alleged deficiencies in the 2001 offer of UM/UIM coverage; and 3) the portion of Plaintiff's Sixth Cause of Action alleging intentional infliction of emotional

distress based on the alleged deficiencies in the 2001 offer of UM/UIM coverage.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 28, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CINDY LEE V. GEICO; CIVIL 11-00782 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GOVERNMENT EMPLOYEES INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF CINDY LEE'S CROSS MOTION FOR SUMMARY JUDGMENT